# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS (Boston)

| | |
|---|---|
| BRUCE RIGGS, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 03-CV-12500 Judge William G. Young |
| Plaintiff, | |
| vs. | **SECURITIES CLASS ACTION** |
| MASSACHUSETTS FINANCIAL SERVICES COMPANY, MFS INVESTMENT MANAGEMENT, SUN LIFE FINANCIAL, INC., MFS SERIES TRUST I, MFS SERIES TRUST II, MFS SERIES TRUST III, MFS SERIES TRUST IV, MFS SERIES TRUST V, MFS SERIES TRUST VI, MFS SERIES TRUST VII, MFS SERIES TRUST VIII, MFS SERIES TRUST IX, MFS SERIES TRUST X, MFS SERIES XI, MFS CAPITAL OPPORTUNITIES FUND, MFS CORE GROWTH FUND, MFS EMERGING GROWTH FUND, MFS LARGE CAP GROWTH FUND, MFS MANAGED SECTORS FUND, MFS MID CAP GROWTH FUND, MFS NEW DISCOVERY FUND, MFS NEW ENDEAVOR FUND, MFS RESEARCH FUND, MFS STRATEGIC GROWTH FUND, MFS TECHNOLOGY FUND, MASSACHUSETTS INVESTORS GROWTH STOCK, MFS MID CAP VALUE FUND, MFS RESEARCH GROWTH AND INCOME FUND, MFS TOTAL RETURN FUND, MFS UNION STANDARD EQUITY FUND, MFS UTILITIES FUND, MFS | |
| **[Caption continued on next page]** | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE CITY OF CHICAGO, FOR THE CITY OF CHICAGO DEFERRED COMPENSATION PLAN, FOR: (1) APPOINTMENT OF THE CITY OF CHICAGO DEFERRED COMPENSATION PLAN AS LEAD PLAINTIFF; (2) APPROVAL OF ITS SELECTION OF COUNSEL TO SERVE AS LEAD COUNSEL FOR THE CLASS; AND (3) CONSOLIDATION OF ALL RELATED ACTIONS**

VALUE FUND, MASSACHUSETTS
INVESTORS TRUST, MFS AGGRESSIVE
GROWTH ALLOCATION FUND, MFS
CONSERVATIVE ALLOCATION FUND, MFS
MODERATE ALLOCATION FUND, MFS
BOND FUND, MFS EMERGING MARKETS
DEBT FUND, MFS GOVERNMENT LIMITED
MATURITY FUND, MFS GOVERNMENT
MORTGAGE FUND, MFS GOVERNMENT
SECURITIES FUND, MFS HIGH INCOME
FUND, MFS HIGH YIELD OPPORTUNITIES
FUND, MFS INTERMEDIATE INVESTMENT
GRADE BOND FUND, MFS LIMITED
MATURITY FUND, MFS RESEARCH BOND
FUND, MFS STRATEGIC INCOME FUND,
MFS ALABAMA MUNICIPAL BOND FUND,
MFS ARKANSAS MUNICIPAL BOND FUND,
MFS CALIFORNIA MUNICIPAL BOND
FUND, MFS FLORIDA MUNICIPAL BOND
FUND, MFS GEORGIA MUNICIPAL BOND
FUND, MFS MARYLAND MUNICIPAL BOND
FUND, MFS MASSACHUSETTS MUNICIPAL
BOND FUND, MFS MUNICIPAL BOND
FUND, MFS MUNICIPAL LIMITED
MATURITY FUND, MFS NEW YORK
MUNICIPAL BOND FUND, MFS NORTH
CAROLINA MUNICIPAL BOND FUND, MFS
PENNSYLVANIA MUNICIPAL BOND FUND,
MFS SOUTH CAROLINA MUNICIPAL BOND
FUND, MFS TENNESSEE MUNICIPAL BOND
FUND, MFS VIRGINIA MUNICIPAL BOND
FUND, MFS WEST VIRGINIA MUNICIPAL
BOND FUND, MFS EMERGING MARKETS
EQUITY FUND, MFS GLOBAL EQUITY
FUND, MFS GLOBAL GROWTH FUND, MFS
GLOBAL TOTAL RETURN FUND, MFS
INTERNATIONAL GROWTH FUND, MFS
INTERNATIONAL NEW DISCOVERY FUND,
MFS INTERNATIONAL VALUE FUND, MFS
RESEARCH INTERNATIONAL FUND, and
DOES 1–100,

Defendants.

**[See additional captions on subsequent pages]**

OLIVER S. TRONE, Individually and On Behalf
of All Others Similarly Situated,

Plaintiff,

vs.

MFS CAPITAL OPPORTUNITIES FUND, MFS
CORE GROWTH FUND, MFS EMERGING
GROWTH FUND, MFS GROWTH
OPPORTUNITIES FUND, MFS LARGE CAP
GROWTH FUND, MFS MANAGED SECTORS
FUND, MFS MID CAP GROWTH FUND, MFS
NEW DISCOVERY FUND, MFS NEW
ENDEAVOR FUND, MFS RESEARCH FUND,
MFS STRATEGIC GROWTH FUND, MFS
TECHNOLOGY FUND, MASSACHUSETTS
INVESTORS GROWTH STOCK, MFS MID
CAP VALUE FUND, MFS RESEARCH
GROWTH AND INCOME FUND, MFS
STRATEGIC VALUE FUND, MFS TOTAL
RETURN FUND, MFS UNION STANDARD
EQUITY FUND, MFS UTILITIES FUND, MFS
VALUE FUND, MASSACHUSETTS
INVESTORS TRUST, MFS AGGRESSIVE
GROWTH ALLOCATION FUND, MFS
CONSERVATIVE ALLOCATION FUND, MFS
GROWTH ALLOCATION FUND, MFS
MODERATE ALLOCATION FUND, MFS
BOND FUND, MFS EMERGING MARKETS
DEBT FUND, MFS GOVERNMENT LIMITED
MATURITY FUND, MFS GOVERNMENT
MORTGAGE FUND, MFS GOVERNMENT
SECURITIES FUND, MFS HIGH INCOME
FUND, MFS HIGH YIELD OPPORTUNITIES
FUND, MFS INTERMEDIATE INVESTMENT
GRADE BOND FUND, MFS LIMITED
MATURITY FUND, MFS RESEARCH BOND
FUND, MFS STRATEGIC INCOME FUND,
MFS ALABAMA MUNICIPAL BOND FUND,
MFS ARKANSAS MUNICIPAL BOND FUND,
MFS CALIFORNIA MUNICIPAL BOND
FUND, MFS FLORIDA MUNICIPAL BOND
FUND,

**[Caption continued on next page]**

Civil Action No. 03-CV-12514
Judge William G. Young

**SECURITIES CLASS ACTION**

MFS GEORGIA MUNICIPAL BOND FUND,
MFS MARYLAND MUNICIPAL BOND FUND,
MFS MASSACHUSETTS MUNICIPAL BOND
FUND, MFS MISSISSIPPI MUNICIPAL BOND
FUND, MFS MUNICIPAL BOND FUND, MFS
MUNICIPAL LIMITED MATURITY FUND,
MFS NEW YORK MUNICIPAL BOND FUND,
MFS NORTH CAROLINA MUNICIPAL BOND
FUND, MFS PENNSYLVANIA MUNICIPAL
BOND FUND, MFS SOUTH CAROLINA
MUNICIPAL BOND FUND, MFS TENNESSEE
MUNICIPAL BOND FUND, MFS VIRGINIA
MUNICIPAL BOND FUND, MFS WEST
VIRGINIA MUNICIPAL BOND FUND, MFS
EMERGING MARKETS EQUITY FUND, MFS
GLOBAL EQUITY FUND, MFS GLOBAL
GROWTH FUND, MFS GLOBAL TOTAL
RETURN FUND, MFS INTERNATIONAL
GROWTH FUND, MFS INTERNATIONAL
NEW DISCOVERY FUND, MFS
INTERNATIONAL VALUE FUND, MFS
RESEARCH INTERNATIONAL FUND, MFS
CASH RESERVE FUND, MFS GOVERNMENT
MONEY MARKET FUND, MFS MONEY
MARKET FUND (collectively known as "MFS
FUNDS"); MFS MUNICIPAL SERIES TRUST,
MFS SERIES TRUST I, MFS SERIES TRUST II,
MFS SERIES TRUST III, MFS SERIES TRUST
IV, MFS SERIES TRUST V, MFS SERIES
TRUST VI, MFS SERIES TRUST VII, MFS
SERIES TRUST VIII, MFS SERIES TRUST IX,
MFS SERIES TRUST X, AND MFS SERIES
TRUST XI (collectively known as the "MFS
FUNDS REGISTRANTS"); SUN LIFE
FINANCIAL INC.; MASSACHUSETTS
FINANCIAL SERVICES COMPANY (d/b/a
"MFS INVESTMENT MANAGEMENT"), and
JOHN DOES 1–100,

                    Defendants.

DAVID SHAEV, Individually and On Behalf of
All Others Similarly Situated,

                Plaintiff,

    vs.

MASSACHUSETTS FINANCIAL SERVICES
CO.,

                Defendants.

|  |
|---|

Civil Action No.  03-CV-12520
Judge Morris E. Lasker

**SECURITIES CLASS ACTION**

---

DANIELLE ADAMS and DEAN
DELLAVENTURA, Individually and On Behalf
of All Others Similarly Situated,

                Plaintiffs,

    vs.

MFS CAPITAL OPPORTUNITIES FUND, MFS
CORE GROWTH FUND, MFS EMERGING
GROWTH FUND, MFS GROWTH
OPPORTUNITIES FUND, MFS LARGE CAP
GROWTH FUND, MFS MANAGED SECTORS
FUND, MFS MID CAP GROWTH FUND, MFS
NEW DISCOVERY FUND, MFS NEW
ENDEAVOR FUND, MFS RESEARCH FUND,
MFS STRATEGIC GROWTH FUND, MFS
TECHNOLOGY FUND, MASSACHUSETTS
INVESTORS GROWTH STOCK, MFS MID
CAP VALUE FUND, MFS RESEARCH
GROWTH AND INCOME FUND, MFS
STRATEGIC VALUE FUND, MFS TOTAL
RETURN FUND, MFS UNION STANDARD
EQUITY FUND, MFS UTILITIES FUND, MFS
VALUE FUND, MASSACHUSETTS
INVESTORS TRUST, MFS AGGRESSIVE
GROWTH ALLOCATION FUND, MFS
CONSERVATIVE ALLOCATION FUND, MFS
GROWTH ALLOCATION FUND, MFS
MODERATE ALLOCATION FUND, MFS
BOND FUND, MFS EMERGING MARKETS

**[Caption continued on next page]**

Civil Action No.  03-CV-12536
Judge William G. Young

**SECURITIES CLASS ACTION**

DEBT FUND, MFS GOVERNMENT LIMITED
MATURITY FUND, MFS GOVERNMENT
MORTGAGE FUND, MFS GOVERNMENT
SECURITIES FUND, MFS HIGH INCOME
FUND, MFS HIGH YIELD OPPORTUNITIES
FUND, MFS INTERMEDIATE INVESTMENT
GRADE BOND FUND, MFS LIMITED
MATURITY FUND, MFS RESEARCH BOND
FUND, MFS STRATEGIC INCOME FUND,
MFS ALABAMA MUNICIPAL BOND FUND,
MFS ARKANSAS MUNICIPAL BOND FUND,
MFS CALIFORNIA MUNICIPAL BOND
FUND, MFS FLORIDA MUNICIPAL BOND
FUND, MFS GEORGIA MUNICIPAL BOND
FUND, MFS MARYLAND MUNICIPAL BOND
FUND, MFS MASSACHUSETTS MUNICIPAL
BOND FUND, MFS MISSISSIPPI MUNICIPAL
BOND FUND, MFS MUNICIPAL BOND
FUND, MFS MUNICIPAL LIMITED
MATURITY FUND, MFS NEW YORK
MUNICIPAL BOND FUND, MFS NORTH
CAROLINA MUNICIPAL BOND FUND, MFS
PENNSYLVANIA MUNICIPAL BOND FUND,
MFS SOUTH CAROLINA MUNICIPAL BOND
FUND, MFS TENNESSEE MUNICIPAL BOND
FUND, MFS VIRGINIA MUNICIPAL BOND
FUND, MFS WEST VIRGINIA MUNICIPAL
BOND FUND, MFS EMERGING MARKETS
EQUITY FUND, MFS GLOBAL EQUITY, MFS
GLOBAL GROWTH FUND, MFS GLOBAL
TOTAL RETURN FUND, MFS
INTERNATIONAL GROWTH FUND, MFS
INTERNATIONAL NEW DISCOVERY FUND,
MFS INTERNATIONAL VALUE FUND, MFS
RESEARCH INTERNATIONAL FUND, MFS
CASH RESERVE FUND, MFS GOVERNMENT
MONEY MARKET FUND, MFS MONEY
MARKET FUND, MFS FIXED FUND
(collectively known as "MFS FUNDS"); MFS
MUNICIPAL SERIES TRUST, MFS SERIES
TRUST I, MFS SERIES TRUST II, MFS SERIES
TRUST III, MFS SERIES TRUST IV, MFS
SERIES TRUST V, MFS SERIES TRUST VI,
MFS SERIES TRUST VII, MFS SERIES TRUST
VIII, MFS SERIES TRUST IX, MFS SERIES
**[Caption continued on next page]**

TRUST X, AND MFS SERIES TRUST XI
(collectively known as the "MFS FUNDS
REGISTRANTS"); SUN LIFE FINANCIAL
INC.; MASSACHUSETTS FINANCIAL
SERVICES COMPANY (d/b/a "MFS
INVESTMENT MANAGEMENT"), and JOHN
DOES 1–100,

                    Defendants.

JACOB ELEPHANT, Individually and On Behalf
of All Others Similarly Situated,

                    Plaintiff,

        vs.

MASSACHUSETTS FINANCIAL SERVICES
COMPANY, MFS INVESTMENT
MANAGEMENT, SUN LIFE FINANCIAL,
INC., MFS SERIES TRUST I, MFS SERIES
TRUST II, MFS SERIES TRUST III, MFS
SERIES TRUST IV, MFS SERIES TRUST V,
MFS SERIES TRUST VI, MFS SERIES TRUST
VII, MFS SERIES TRUST VIII, MFS SERIES
TRUST IX, MFS SERIES TRUST X, MFS
SERIES TRUST XI, MFS CAPITAL
OPPORTUNITIES FUND, MFS CORE
GROWTH FUND, MFS EMERGING GROWTH
FUND, MFS LARGE CAP GROWTH FUND,
MFS MANAGED SECTORS FUND, MFS MID
CAP GROWTH FUND, MFS NEW
DISCOVERY FUND, MFS NEW ENDEAVOR
FUND, MFS RESEARCH FUND, MFS
STRATEGIC GROWTH FUND, MFS
TECHNOLOGY FUND, MASSACHUSETTS
INVESTORS GROWTH STOCK, MFS MID
CAP VALUE FUND, MFS RESEARCH
GROWTH AND INCOME FUND, MFS TOTAL
RETURN FUND, MFS UNION STANDARD
EQUITY FUND, MFS UTILITIES FUND, MFS
VALUE FUND, MASSACHUSETTS
INVESTORS TRUST, MFS AGGRESSIVE
GROWTH ALLOCATION FUND, MFS
CONSERVATIVE ALLOCATION FUND, MFS
MODERATE ALLOCATION
**[Caption continued on next page]**

Civil Action No.  03-CV-12570
Judge William G. Young

**SECURITIES CLASS ACTION**

FUND, MFS BOND FUND, MFS EMERGING
MARKETS DEBT FUND, MFS
GOVERNMENT LIMITED MATURITY FUND,
MFS GOVERNMENT MORTGAGE FUND,
MFS GOVERNMENT SECURITIES FUND,
MFS HIGH INCOME FUND, MFS HIGH
YIELD OPPORTUNITIES FUND, MFS
INTERMEDIATE INVESTMENT GRADE
BOND FUND, MFS LIMITED MATURITY
FUND, MFS RESEARCH BOND FUND, MFS
STRATEGIC INCOME FUND, MFS
ALABAMA MUNICIPAL BOND FUND, MFS
ARKANSAS MUNICIPAL BOND FUND, MFS
CALIFORNIA MUNICIPAL BOND FUND,
MFS FLORIDA MUNICIPAL BOND FUND,
MFS GEORGIA MUNICIPAL BOND FUND,
MFS MARYLAND MUNICIPAL BOND FUND,
MFS MASSACHUSETTS MUNICIPAL BOND
FUND, MFS MISSISSIPPI MUNICIPAL BOND
FUND, MFS MUNICIPAL BOND FUND, MFS
MUNICIPAL LIMITED MATURITY FUND,
MFS NEW YORK MUNICIPAL BOND FUND,
MFS NORTH CAROLINA MUNICIPAL BOND
FUND, MFS PENNSYLVANIA MUNICIPAL
BOND FUND, MFS SOUTH CAROLINA
MUNICIPAL BOND FUND, MFS TENNESSEE
MUNICIPAL BOND FUND, MFS VIRGINIA
MUNICIPAL BOND FUND, MFS WEST
VIRGINIA MUNICIPAL BOND FUND, MFS
EMERGING MARKETS EQUITY FUND, MFS
GLOBAL EQUITY FUND, MFS GLOBAL
GROWTH FUND, MFS GLOBAL TOTAL
RETURN FUND, MFS INTERNATIONAL
GROWTH FUND, MFS INTERNATIONAL
NEW DISCOVERY FUND, MFS
INTERNATIONAL VALUE FUND, MFS
RESEARCH INTERNATIONAL FUND (the
"MFS Funds"), and DOES 1–100,

                    Defendants.

YAKOV BURSTEIN, IRA, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

vs.

MFS GLOBAL TELECOMMUNICATIONS FUND, MFS CAPITAL OPPORTUNITIES FUND, MFS CORE GROWTH FUND, MFS EMERGING GROWTH FUND, MFS GROWTH OPPORTUNITIES FUND, MFS LARGE CAP GROWTH FUND, MFS MANAGED SECTORS FUND, MFS MID CAP GROWTH FUND, MFS NEW DISCOVERY FUND, MFS NEW ENDEAVOR FUND, MFS RESEARCH FUND, MFS STRATEGIC GROWTH FUND, MFS TECHNOLOGY FUND, MASSACHUSETTS INVESTORS GROWTH STOCK, MFS MID CAP VALUE FUND, MFS RESEARCH GROWTH AND INCOME FUND, MFS STRATEGIC VALUE FUND, MFS TOTAL RETURN FUND, MFS UNION STANDARD EQUITY FUND, MFS UTILITIES FUND, MFS VALUE FUND, MASSACHUSETTS INVESTORS TRUST, MFS AGGRESSIVE GROWTH ALLOCATION FUND, MFS CONSERVATIVE ALLOCATION FUND, MFS GROWTH ALLOCATION FUND, MFS MODERATE ALLOCATION FUND, MFS BOND FUND, MFS EMERGING MARKETS DEBT FUND, MFS GOVERNMENT LIMITED MATURITY FUND, MFS GOVERNMENT MORTGAGE FUND, MFS GOVERNMENT SECURITIES FUND, MFS HIGH INCOME FUND, MFS HIGH YIELD OPPORTUNITIES FUND, MFS INTERMEDIATE INVESTMENT GRADE BOND FUND, MFS LIMITED MATURITY FUND, MFS RESEARCH BOND FUND, MFS STRATEGIC INCOME FUND, MFS ALABAMA MUNICIPAL BOND FUND, MFS ARKANSAS MUNICIPAL BOND FUND, MFS CALIFORNIA MUNICIPAL BOND FUND,

**[Caption continued on next page]**

Civil Action No.  03-CV-12622
Judge William G. Young

**<u>SECURITIES CLASS ACTION</u>**

MFS FLORIDA MUNICIPAL BOND FUND,
MFS GEORGIA MUNICIPAL BOND FUND,
MFS MARYLAND MUNICIPAL BOND FUND,
MFS MASSACHUSETTS MUNICIPAL BOND
FUND, MFS MISSISSIPPI MUNICIPAL BOND
FUND, MFS MUNICIPAL BOND FUND, MFS
MUNICIPAL LIMITED MATURITY FUND,
MFS NEW YORK MUNICIPAL BOND FUND,
MFS NORTH CAROLINA MUNICIPAL BOND
FUND, MFS PENNSYLVANIA MUNICIPAL
BOND FUND, MFS SOUTH CAROLINA
MUNICIPAL BOND FUND, MFS TENNESSEE
MUNICIPAL BOND FUND, MFS VIRGINIA
MUNICIPAL BOND FUND, MFS WEST
VIRGINIA MUNICIPAL BOND FUND, MFS
EMERGING MARKETS EQUITY FUND, MFS
GLOBAL EQUITY FUND, MFS GLOBAL
GROWTH FUND, MFS GLOBAL TOTAL
RETURN FUND, MFS INTERNATIONAL
GROWTH FUND, MFS INTERNATIONAL
NEW DISCOVERY FUND, MFS
INTERNATIONAL VALUE FUND, MFS
RESEARCH INTERNATIONAL FUND, MFS
CASH RESERVE FUND, MFS GOVERNMENT
MONEY MARKET FUND, MFS MONEY
MARKET FUND (collectively known as "MFS
FUNDS"); MFS MUNICIPAL SERIES TRUST,
MFS SERIES TRUST I, MFS SERIES TRUST II,
MFS SERIES TRUST III, MFS SERIES TRUST
IV, MFS SERIES TRUST V, MFS SERIES
TRUST VI, MFS SERIES TRUST VII, MFS
SERIES TRUST VIII, MFS SERIES TRUST IX,
MFS SERIES TRUST X, AND MFS SERIES
TRUST XI (collectively knows as the "MFS
FUNDS REGISTRANTS"); SUN LIFE
FINANCIAL INC.; MASSACHUSETTS
FINANCIAL SERVICES COMPANY (d/b/a/
"MFS INVESTMENT MANAGEMENT"), and
JOHN DOES 1–100,

Defendants.

ALBERT FELDMAN, Individually and On
Behalf of All Others Similarly Situated,

              Plaintiff,

     vs.

MASSACHUSETTS FINANCIAL SERVICES
COMPANY, MFS INVESTMENT
MANAGEMENT, SUN LIFE FINANCIAL,
INC., MFS SERIES TRUST I, MFS SERIES
TRUST II, MFS SERIES TRUST III, MFS
SERIES TRUST IV, MFS SERIES TRUST V,
MFS SERIES TRUST VI, MFS SERIES TRUST
VII, MFS
SERIES TRUST VIII, MFS SERIES TRUST IX,
MFS SERIES TRUST X, MFS SERIES TRUST
XI, MFS CAPITAL OPPORTUNITIES FUND,
MFS CORE GROWTH FUND, MFS
EMERGING GROWTH FUND, MFS LARGE
CAP GROWTH FUND, MFS MANAGED
SECTORS FUND, MFS MID CAP GROWTH
FUND, MFS NEW DISCOVERY FUND, MFS
NEW ENDEAVOR FUND, MFS RESEARCH
FUND, MFS STRATEGIC GROWTH FUND,
MFS TECHNOLOGY FUND,
MASSACHUSETTS INVESTORS GROWTH
STOCK, MFS MID CAP VALUE FUND, MFS
RESEARCH GROWTH AND INCOME FUND,
MFS TOTAL RETURN FUND, MFS UNION
STANDARD EQUITY FUND, MFS UTILITIES
FUND, MFS VALUE FUND,
MASSACHUSETTS INVESTORS TRUST, MFS
AGGRESSIVE GROWTH ALLOCATION
FUND, MFS CONSERVATIVE ALLOCATION
FUND, MFS MODERATE ALLOCATION
FUND, MFS BOND FUND, MFS EMERGING
MARKETS DEBT FUND, MFS
GOVERNMENT LIMITED MATURITY FUND,
MFS GOVERNMENT MORTGAGE FUND,
MFS GOVERNMENT SECURITIES FUND,
MFS HIGH INCOME FUND, MFS HIGH
YIELD OPPORTUNITIES FUND, MFS
INTERMEDIATE INVESTMENT GRADE
**[Caption continued on next page]**

Civil Action No.  04-CV-10009
Judge Richard G. Stearns


**SECURITIES CLASS ACTION**

BOND FUND, MFS LIMITED MATURITY
FUND, MFS RESEARCH BOND FUND, MFS
STRATEGIC INCOME FUND, MFS
ALABAMA MUNICIPAL BOND FUND, MFS
ARKANSAS MUNICIPAL BOND FUND, MFS
CALIFORNIA MUNICIPAL BOND FUND,
MFS FLORIDA MUNICIPAL BOND FUND,
MFS GEORGIA MUNICIPAL BOND FUND,
MFS MARYLAND MUNICIPAL BOND FUND,
MFS MASSACHUSETTS MUNICIPAL BOND
FUND, MFS MISSISSIPPI MUNICIPAL BOND
FUND, MFS MUNICIPAL BOND FUND, MFS
MUNICIPAL LIMITED MATURITY FUND,
MFS NEW YORK MUNICIPAL BOND FUND,
MFS NORTH CAROLINA MUNICIPAL BOND,
FUND, MFS PENNSYLVANIA MUNICIPAL
BOND FUND, MFS SOUTH CAROLINA
MUNICIPAL BOND FUND, MFS TENNESSEE
MUNICIPAL BOND FUND, MFS VIRGINIA
MUNICIPAL BOND FUND, MFS WEST
VIRGINIA MUNICIPAL BOND FUND, MFS
EMERGING MARKETS EQUITY FUND, MFS
GLOBAL EQUITY FUND, MFS GLOBAL
GROWTH FUND, MFS GLOBAL TOTAL
RETURN FUND, MFS INTERNATIONAL
GROWTH FUND, MFS INTERNATIONAL
NEW DISCOVERY FUND, MFS
INTERNATIONAL VALUE FUND, MFS
RESEARCH INTERNATIONAL FUND,
(collectively the "MFS Funds"), and JOHN DOES
CORPORATIONS 1–100,

              Defendants.

---

ED CASEY,

              Plaintiff,

       vs.

MASSACHUSETTS FINANCIAL SERVICES
CO.,

              Defendant.

Civil Action No.  04-CV-10010
Judge Morris E. Lasker

**SECURITIES CLASS ACTION**

HUGH F. BOYD, III, and SANDRA S. BOYD,
Individually and On Behalf of All Others
Similarly Situated,

Civil Action No. 04-CV-10252
Judge William G. Young

**SECURITIES CLASS ACTION**

              Plaintiffs,

    vs.

MASSACHUSETTS FINANCIAL SERVICES
COMPANY, MFS INVESTMENT
MANAGEMENT, SUN LIFE FINANCIAL,
INC., MFS SERIES TRUST I, MFS SERIES
TRUST II, MFS SERIES TRUST III, MFS
SERIES TRUST IV, MFS SERIES TRUST V,
MFS SERIES TRUST VI, MFS SERIES TRUST
VII, MFS SERIES TRUST VII, MFS SERIES
TRUST IX, MFS SERIES TRUST X, MFS
SERIES TRUST XI, MFS CAPITAL
OPPORTUNITIES FUND, MFS CORE
GROWTH FUND, MFS EMERGING GROWTH
FUND, MFS LARGE CAP GROWTH FUND,
MFS MANAGED SECTORS FUND, MFS MID
CAP GROWTH FUND, MFS NEW
DISCOVERY FUND, MFS NEW ENDEAVOR
FUND, MFS RESEARCH FUND, MFS
STRATEGIC GROWTH FUND, MFS
TECHNOLOGY FUND, MASSACHUSETTS
INVESTORS GROWTH STOCK, MFS MID
CAP VALUE FUND, MFS RESEARCH
GROWTH AND INCOME FUND, MFS TOTAL
RETURN FUND, MFS UNION STANDARD
EQUITY FUND, MFS UTILITIES FUND, MFS
VALUE FUND, MASSACHUSETTS
INVESTORS TRUST, MFS AGGRESSIVE
GROWTH ALLOCATION FUND, MFS
CONSERVATIVE ALLOCATION FUND, MFS
MODERATE ALLOCATION FUND, MFS
BOND FUND, MFS EMERGING MARKETS
DEBT FUND, MFS GOVERNMENT LIMITED
MATURITY FUND, MFS GOVERNMENT
MORTGAGE FUND, MFS GOVERNMENT
SECURITIES FUND, MFS HIGH INCOME
FUND, MFS HIGH YIELD OPPORTUNITIES
FUND, MFS INTERMEDIATE INVESTMENT

**[Caption continued on next page]**

GRADE BOND FUND, MFS LIMITED
MATURITY FUND, MFS RESEARCH BOND
FUND, MFS STRATEGIC INCOME FUND
MFS ALABAMA MUNICIPAL BOND FUND,
MFS ARKANSAS MUNICIPAL BOND FUND,
MFS CALIFORNIA MUNICIPAL BOND
FUND, MFS FLORIDA MUNICIPAL BOND
FUND, MFS GEORGIA MUNICIPAL BOND
FUND, MFS MARYLAND MUNICIPAL BOND
FUND, MFS MASSACHUSETTS MUNICIPAL
BOND FUND, MFS MISSISSIPPI MUNICIPAL
BOND FUND, MFS MUNICIPAL BOND
FUND, MFS MUNICIPAL LIMITED
MATURITY FUND, MFS NEW YORK
MUNICIPAL BOND FUND, MFS NORTH
CAROLINA MUNICIPAL BOND FUND, MFS
PENNSYLVANIA MUNICIPAL BOND FUND,
MFS SOUTH CAROLINA MUNICIPAL BOND
FUND, MFS TENNESSEE MUNICIPAL BOND
FUND, MFS VIRGINIA MUNICIPAL BOND
FUND, MFS WEST VIRGINIA MUNICIPAL
BOND FUND, MFS EMERGING MARKETS
EQUITY FUND, MFS GLOBAL EQUITY
FUND, MFS GLOBAL GROWTH FUND, MFS
GLOBAL TOTAL RETURN FUND, MFS
INTERNATIONAL GROWTH FUND, MFS
INTERNATIONAL NEW DISCOVERY FUND,
MFS INTERNATIONAL VALUE FUND, MFS
RESEARCH INTERNATIONAL FUND, and
DOES 1-100,

Defendants.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................ii

I.      PRELIMINARY STATEMENT ................................................................ 1

II.     SUMMARY OF ALLEGATIONS ............................................................3

III.    PROCEDURAL HISTORY .....................................................................5

IV.     ARGUMENT............................................................................................6

        A.          The Related Actions Should Be Consolidated ...........................6

        B.          The Chicago Deferred Compensation Plan
                    Is the Most Adequate Lead Plaintiff...........................................7

               1.   The Chicago Deferred Compensation Plan Is An
                    Institutional Investor With The Largest Financial
                    Interest In The Relief Sought By The Class ................................7

               2.   The Chicago Deferred Compensation Plan
                    Meets The Requirements of Rule 23 of The
                    Federal Rules of Civil Procedure...............................................11

               3.   The Court Should Approve the Chicago Deferred
                    Compensation Plan's Choice of Counsel ..................................13

V.      CONCLUSION .......................................................................................15

## TABLE OF AUTHORITIES

<u>Case</u>                                                                            <u>Page</u>

*Bowman v. Legato Sys.*,
    195 F.R.D. 655 (N.D. Cal. 2000) ................................................................. 9

*General Tel. Co. v. Falcon*,
    457 U.S. 147 (1982) ................................................................................. 12

*Gluck v. CellStar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) .......................................................... 9, 10

*Greebel v. FTP Software, Inc.*,
    939 F. Supp. 57 (D. Mass. 1996) ............................................................. 3, 9

*In re Baan Co. Sec. Litig.*,
    186 F.R.D. 214 (D.D.C. 1999) .................................................................. 9

*In re Bank of Boston Corp. Sec. Litig.*,
    762 F. Supp. 1525 (D. Mass. 1991) ......................................................... 11

*In re Cendant Corp. Sec. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .................................................................... 9

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992) .................................................................... 13

*In re Lernout & Hauspie Sec. Litig.*,
    138 F. Supp. 2d 39 (D. Mass. 2001) ................................................. 3, 11, 13

*In re NASDAQ Market-Makers Antitrust Litig.*,
    172 F.R.D. 119 (S.D.N.Y. 1997) ........................................................ 12, 13

*In re Network Assocs. Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...................................................... 9

*In re Oxford Health Plans, Inc., Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................. 11

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001) .................................................. 3, 10

*In re Tyco Int'l Ltd. Sec. Litig.*,
    2000 U.S. Dist. LEXIS 13390 (D. N.H. 2000) ......................................... 11

*Johnson v. Celotex Corp.*,
　　899 F.2d 1281 (2d Cir. 1990) ............................................................................7

*Mitchell v. Complete Mgmt., Inc. Sec. Litig.*,
　　No. 99-CV-1454, 1999 WL 728678 (S.D.N.Y. Sept. 17, 1999) ...........................7

*Primavera Familienstiftung v. Askin*,
　　173 F.R.D. 115 (S.D.N.Y. 1997) .........................................................................7

*Ravens v. Iftikar*,
　　174 F.R.D. 651 (N.D. Cal. 1997) ........................................................................9

*Robidoux v. Celani*,
　　987 F.2d 931 (2d Cir. 1993) ..............................................................................11

*Schulman v. Lumenis, Ltd.*,
　　2003 U.S. Dist. LEXIS 10348 (S.D.N.Y. June 18, 2003) ............................9, 11

*Smith v. Suprema Specialties, Inc.*,
　　206 F. Supp. 2d 627 (D.N.J. 2002) ......................................................................3

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
　　216 F.R.D. 248 (S.D.N.Y. 2003) .......................................................................11

*Weltz v. Lee*,
　　199 F.R.D. 129 (S.D.N.Y. 2001) .......................................................................11

Statues, Rules & Regulations

15 U.S.C.
　　§ 77z-1(a) .........................................................................................................2
　　§ 77z-1(a)(3)(i) .................................................................................................8
　　§ 77z-1(a)(3)(A)(i)(II) .......................................................................................8
　　§ 77z-1(a)(3)(B)(ii) ........................................................................................2, 6
　　§ 77z-1(a)(3)(B)(iii) ..........................................................................................2
　　§ 77z-1(a)(3)(B)(iii)(I) ......................................................................................8
　　§ 77z-1(a)(3)(B)(iii)(II)(aa) .............................................................................13
　　§ 78u-4(a)(3)(i) .................................................................................................8
　　§ 78u-4(a)(3)(A)(i)(II) .......................................................................................8
　　§ 78u-4(a)(3)(B) ...............................................................................................2
　　§ 78u-4(a)(3)(B)(ii) ........................................................................................2, 6
　　§ 78u-4(a)(3)(B)(iii) ..........................................................................................2
　　§ 78u-4(a)(3)(B)(iii)(I) ......................................................................................8
　　§ 78u-4(a)(3)(B)(iii)(II)(aa) .............................................................................13

Federal Rules of Civil Procedure
    Rule 42(a) .................................................................................................................2, 7

Secondary Authorities

*Elliott J. Weiss & John S. Beckerman, Let The Money Do The Monitoring: How
    Institutional Investors Can Reduce Agency Costs In Securities Class Actions,*
    104 Yale L.J. 2053, 2095 (1995) ....................................................................... 10

H.R. Conf. Rep. No. 104-369, at 34 (1995) ................................................................. 9

S. Rep. No. 104-98, at 11 n.32 ..................................................................................... 10

## I.  PRELIMINARY STATEMENT

The City of Chicago Deferred Compensation Plan (the "Chicago Deferred Compensation Plan" or the "Chicago 457 Plan") is a deferred compensation plan that operates for the benefit of current and retired public employees of the City of Chicago.   The Chicago Deferred Compensation Plan purchased and otherwise held numerous shares of certain of the mutual funds offered by Massachusetts Financial Services Company (the "MFS Funds")[1] in the open market during the period from December 15, 1998 through December 8, 2003 (the "Class Period").

---

[1] Hereinafter, "MFS Funds" shall refer to MFS Capital Opportunities Fund, MFS Core Growth Fund, MFS Emerging Growth Fund, MFS Growth Opportunities Fund, MFS Large Cap Growth Fund, MFS Managed Sectors Fund, MFS Mid Cap Growth Fund, MFS New Discovery Fund, MFS New Endeavor Fund, MFS Research Fund, MFS Strategic Growth Fund, MFS Technology Fund, Massachusetts Investors Growth Stock Fund, MFS Mid Cap Value Fund, MFS Research Growth and Income Fund, MFS Strategic Value Fund, MFS Total Return Fund, MFS Union Standard Equity Fund, MFS Utilities Fund, MFS Value Fund, Massachusetts Investors Trust MFS Aggressive Growth Allocation Fund, MFS Conservative Allocation Fund, MFS Growth Allocation Fund, MFS Moderate Allocation Fund, MFS Bond Fund, MFS Emerging Markets Debt Fund, MFS Government Limited Maturity Fund, MFS Government Mortgage Fund, MFS Government Securities Fund, MFS High Income Fund, MFS High Yield Opportunities Fund, MFS Intermediate Investment Grade Bond Fund, MFS Limited Maturity Fund, MFS Research Bond Fund, MFS Strategic Income Fund, MFS Alabama Municipal Bond Fund, MFS Arkansas Municipal Bond Fund, MFS California Municipal Bond Fund, MFS Florida Municipal Bond Fund, MFS Georgia Municipal Bond Fund, MFS Maryland Municipal Bond Fund, MFS Massachusetts Municipal Bond Fund, MFS Mississippi Municipal Bond Fund, MFS Municipal Bond Fund, MFS Municipal High Income Fund, MFS Municipal Income Fund, MFS Municipal Limited Maturity Fund, MFS New York Municipal Bond Fund, MFS North Carolina Municipal Bond Fund, MFS Pennsylvania Municipal Bond Fund, MFS South Carolina Municipal Bond Fund, MFS Tennessee Municipal Bond Fund, MFS Virginia Municipal Bond Fund, MFS West Virginia Municipal Bond Fund, MFS Emerging Markets Equity Fund, MFS Global Equity Fund, MFS Global Growth Fund, MFS Global Total Return Fund, MFS International Growth Fund, MFS International New Discovery Fund, MFS International Value Fund, MFS Research International Fund, MFS Cash Reserve Fund, MFS Government Money Market Fund, MFS Money Market Fund.  Together with the MFS Funds, MFS Municipal Series Trust, MFS Series Trust I, MFS Series Trust II, MFS Series Trust III, MFS Series Trust IV, MFS Series Trust V, MFS Series Trust VI, MFS Series Trust VII, MFS Series Trust VIII, MFS Series Trust IX, MFS Series Trust X, MFS Series Trust XI (known collectively as the "MFS Funds Registrants"); Sun Life Financial Inc.; Massachusetts Financial Services Company (d/b/a MFS Investment Management) ("MFS") and Does 1-100 are referred to herein as the "Defendants."

During the Class Period, the Chicago 457 Plan had a financial interest in excess of $40 million in the MFS Funds. Accordingly, the City of Chicago, for the Chicago Deferred Compensation Plan, hereby moves for the appointment of the Chicago Deferred Compensation Plan as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B) and Section 27(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77z-1(a), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 (the "Reform Act" or "PSLRA").[2] The City of Chicago, for the Chicago Deferred Compensation Plan, further moves for approval of its selection of the law firm of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") to serve as Lead Counsel for the Class and to consolidate all the related securities class actions pursuant to Fed. R. Civ. P. 42(a).[3]

---

[2]  The federal securities laws specifically authorize any class member seeking to be appointed lead plaintiff to either file a complaint or move for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii), 77z-1(a)(3)(B)(iii). A copy of Committee Chair Tariq G. Malhance's certification setting forth the Chicago Deferred Compensation Plan's financial interest in the MFS Funds during the Class Period is attached as Exhibit ("Ex.") A to the Declaration of Alicia M. Duff In Support Of The Motion Of The City Of Chicago, For The Chicago Deferred Compensation Plan, For: (1) Appointment Of The Chicago Deferred Compensation Plan As Lead Plaintiff; (2) Approval Of Its Selection Of Counsel To Serve As Lead Counsel For The Class; and (3) Consolidation Of All Related Actions ("Duff Decl.").

[3]  As set forth below, various investors in the MFS Funds have filed ten similar complaints in this District alleging violations of the federal securities laws. In light of the overlapping facts and parties among these ten pending cases, consolidation pursuant to Fed. R. Civ. P. 42(a) is appropriate and will preserve judicial resources and promote the efficient prosecution of this litigation. Indeed, under the federal securities laws, the Court "shall" first rule on any motion to consolidate and then appoint the Lead Plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(B)(ii); 15 U.S.C. § 78u-4(a)(3)(B)(ii). The Court should also note that there are two actions pending in the Southern District of New York that allege the same or similar claims against the same parties as the actions pending before this Court. (A complete listing of all the pending actions against the Defendants is attached as Ex. B to the Duff Decl.) Accordingly, the City of Chicago, for the Chicago Deferred Compensation Plan, has today filed a similar motion seeking the same relief in the Southern District of New York.

The Chicago Deferred Compensation Plan is precisely the type of sophisticated institutional investor envisioned by Congress to serve as Lead Plaintiff when it enacted the Reform Act. The Chicago 457 Plan covers over 38,000 participants with assets in excess of $1.2 billion under management. The Chicago 457 Plan is administered by the City of Chicago Deferred Compensation Committee (the "Committee"), which is currently comprised of the City Controller, the City Budget Director, and the City Commissioner of Personnel.

The Reform Act provides for the Court to appoint as Lead Plaintiff the movant that has *both* the largest financial interest in the litigation and has made a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 630 (D.N.J. 2002) (holding that the movant has the burden to show that it has a significant financial interest and that it is adequate). *See also Greebel v. FTP Software, Inc.,* 939 F. Supp. 57, 59 (D. Mass. 1996); *In re Lernout & Hauspie Sec. Litig.,* 138 F. Supp. 2d 39, 42 (D. Mass. 2001). The Chicago Deferred Compensation Plan is a sophisticated institutional investor that satisfies both of these requirements.

II.    SUMMARY OF ALLEGATIONS

There are at least ten class action complaints pending in the District of Massachusetts against the Defendants. The complaints allege that the Defendants were aware of and facilitated "timing" trades in the MFS Funds: a money-making act involving short-term trading in and out of a mutual fund. The technique is designed to exploit inefficiencies in the way mutual fund companies price their shares by allowing certain customers to trade shares at distorted prices that no longer reflect the true value of the fund. As a result, those few customers permitted to engage

in market timing typically reap huge profits, the cost of which are borne primarily by the long-term investors in the relevant fund.

The public filings issued by the Defendants stated that, "MFS funds do not permit market-timing or other excessive trading practices that may disrupt portfolio management strategies and may harm fund performance." In reality, however, the Defendants knew, or recklessly disregarded the fact, that trades were being timed and that these timed trades negatively and materially impacted the MFS Funds, thereby causing significant losses to investors in the MFS Funds, including the Chicago 457 Plan.

On February 5, 2004, MFS agreed to entry of a cease-and-desist order by the Securities and Exchange Commission ("SEC") against MFS and John W. Ballen ("Ballen"), MFS's current chief executive officer, and Kevin R. Parke ("Parke"), MFS's current president and chief investment officer ("Cease-and-Desist Order"). Specifically, the SEC found that MFS, Ballen and Parke allowed widespread market timing trading in certain MFS Funds from at least late-1999 through October 2003, in contravention of the Funds' public disclosures. In particular, MFS explicitly informed certain select brokers in a written memo that "unrestricted" trading would be permitted in certain MFS funds (known internally at MFS as "Unrestricted Funds"), including the Massachusetts Investors Growth Stock Fund, in which the Chicago 457 Plan had a financial interest in excess of $8 million during the Class Period, "even if a pattern of excessive trading has been detected." Not only did MFS selectively enforce its market-timing policies, but executives at MFS facilitated the frequent trading in and out of certain MFS Funds by steering select investors to these "Unrestricted Funds." As the Cease-and-Desist Order confirms, as much as $2 billion in timing money flowed into the MFS Funds during the Class Period.

Internal MFS documents and policies acknowledged that market timing was detrimental to long-term shareholders. In fact, as early as June 2000, an internal presentation entitled "Market Timing Wheel of Terror," warned that "[l]ong term investors are being penalized" by market timing activity. Nevertheless, the market timing activity persisted in the MFS "Unrestricted Funds." Moreover, MFS's select enforcement of its trading policies also included late trading, which alone caused over $100 million in investor losses.

MFS's policy of allowing market-timing and steering select investors to the "Unrestricted Funds" was adopted as a means to increase profits by luring market timing assets so as to increase funds under management, and, therefore, increase fees paid to MFS for investment advisory services. These additional assets under management also resulted in an increased bonus pool from which MFS employees, including Ballen and Parke, were paid excessive compensation. In addition to the profits from their market timing, MFS also made illegal gains by charging ordinary investors hundreds of millions of dollars in management fees while breaching their fiduciary duties to those very same investors.

During this period, none of the above detailed material information was disclosed to the Chicago Deferred Compensation Plan or to the other members of the Class.

III.    PROCEDURAL HISTORY

To date, the Chicago Deferred Compensation Plan is aware of the following ten class actions pending in this District against the Defendants for violations of the federal securities laws:

| Abbreviated Case Names | Docket Number | Date Filed |
|---|---|---|
| *Riggs v. Massachusetts Fin. Serv., et al.* | 03-cv-12500 | 12/11/03 |
| *Trone v. MFS Capital Opportunities Fund, et al.* | 03-cv-12514 | 12/15/03 |

| | | |
|---|---|---|
| *Shaev v. Massachusetts Fin. Serv. Co.* | 03-cv-12520 | 12/16/03 |
| *Adams v. MFS Capital Opportunities Fund, et al.* | 03-cv-12536 | 12/17/03 |
| *Elephant v. Massachusetts Fin. Serv., et al.* | 03-cv-12570 | 12/19/03 |
| *Starr v. Massachusetts Fin. Serv., et al.* | 03-cv-12595 | 12/23/03 |
| *Burstein v. MFS Global Telecomm. Fund, et al.* | 03-cv-12622 | 12/30/03 |
| *Feldman v. Massachusetts Fin. Serv., et al.* | 04-cv-10009 | 1/5/04 |
| *Casey v. Massachusetts Fin. Serv. Co., et al.* | 04-cv-10010 | 1/6/04 |
| *Boyd, et al. v. Massachusetts Financial Services Co., et al.* | 04-cv-10252 | 2/5/04 |

Furthermore, the Chicago Deferred Compensation Plan is aware of the following two related class actions pending in the Southern District of New York against the Defendants for violations of the federal securities laws:

| Abbreviated Case Names | Docket Number | Date Filed |
|---|---|---|
| *Colvin v. Massachusetts Fin. Serv. Co., et al.* | 03-CV-10191 | 12/23/03 |
| *Wasserman v. Sun Life Fin. Inc., Massachusetts Fin. Serv. Co., et al.* | 04-CV-00247 | 1/13/04 |

IV.    <u>ARGUMENT</u>

    A.    <u>The Related Actions Should Be Consolidated</u>

The Reform Act provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this Chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §§ 77z-1(a)(3)(B)(ii), 78u-4(a)(3)(B)(ii). Thereafter, the

Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *Id.*

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). Consolidation is particularly appropriate in securities class action litigation. *See Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997); *see also Mitchell v. Complete Mgmt., Inc. Sec. Litig.*, No. 99-CV-1454, 1999 WL 728678, at *1-2 (S.D.N.Y. Sept. 17, 1999) ("[i]n securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact . . . .") (citation omitted).

The pending actions against the Defendants allege claims for violation of Sections 36(a) and 36(b) of the Investment Company Act of 1940, Sections 11 and 15 of the Securities Act, Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, on behalf of investors who purchased, redeemed or otherwise held MFS Funds during the Class Period. The complaints filed in these actions are substantially similar and arise from the same set of facts and conduct. As a result, the Court should consolidate the aforementioned cases, and any others filed subsequently to this motion. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990).

    B.    The Chicago Deferred Compensation
           Plan Is the Most Adequate Lead Plaintiff

        1.    The Chicago Deferred Compensation Plan Is An
               Institutional Investor With The Largest Financial
               Interest In The Relief Sought By The Class

Under the Reform Act, any member of the purported class may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the action has been filed. *See*

15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II), 77z-1(a)(3)(A)(i)(II). Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. §§ 78u-4(a)(3)(B)(i), 77z-1(a)(3)(B)(i). Consistent with its legislative history, the Reform Act directs the court to adopt a rebuttable presumption that:

> [T]he most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa)    has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I), 77z-1(a)(3)(B)(iii)(I).

The legislative history of the Reform Act demonstrates that it was intended to encourage institutional investors, such as the Chicago Deferred Compensation Plan, to serve as Lead Plaintiff. The explanatory report accompanying the Reform Act's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff."
>
>                *              *              *
>
> The Conference Committee believes that . . . in many cases the beneficiaries of pension funds - small investors - ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733

As Judge Batts in the Southern District of New York recently noted, one purpose behind the Reform Act is "to ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs counsel." *Schulman v. Lumenis, Ltd.*, 2003 U.S. Dist. LEXIS 10348, at *5 (S.D.N.Y. June 18, 2003) (internal quotations and citations omitted). "Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs." *Id.*[4]

Indeed, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions." *Greebel*, 939 F. Supp. at 63-64. Furthermore, Congress believed that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999); *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) (stating that Congress wanted to encourage large, sophisticated institutional investors to direct securities class actions, thereby supplanting the prior regime of "figurehead plaintiffs who exercise no meaningful supervision of litigation"). Congress reasoned that the empowerment of institutional investors would result in the

---

[4] *See also In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 244 (3d Cir. 2001) (noting Congressional preference to appoint institutional investors and stating that Congress "anticipated and intended that [institutional investors] would serve as lead plaintiffs"); *Bowman v. Legato Sys.*, 195 F.R.D. 655, 657 (N.D. Cal. 2000) (institutional investors are "exactly the type of lead plaintiff envisioned by Congress when it instituted the [PSLRA] lead plaintiff requirements. . . ."); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) ("Congress expected that the lead plaintiff would normally be an institutional investor"); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors").

appointment of Lead Plaintiffs that can best prosecute the claims and are best able to negotiate

with and oversee counsel. *See In re Razorfish,* 143 F. Supp. 2d at 309 (stating that Congress

intended that "institutional plaintiffs with expertise in the securities market and real financial

interest in the integrity of the market would control the litigation . . ."); *Gluck,* 976 F. Supp. at

548 ("The legislative history of the [Reform Act] is replete with statements of Congress' desire

to put control of such litigation in the hands of large, institutional investors").

This presumption is rooted in Congress' belief that "increasing the role of institutional

investors in class actions will ultimately benefit the class and assist the courts." S. Rep. No. 104-

98, at 11. In reaching this conclusion, Congress reasoned that:

> Institutions' large stakes give them an incentive to monitor, and institutions have
> or readily could develop the expertise necessary to assess whether plaintiffs'
> attorneys are acting as faithful champions for the plaintiff class.

Elliott J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional*

*Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995)

("Weiss & Beckerman"). *See also* S. Rep. No. 104-98, at 11 n.32 (noting that Weiss &

Beckerman provided "the basis for the most adequate plaintiff provision").

The Chicago 457 Plan is ideally suited for the role of Lead Plaintiff. As the fiduciary for

more that 38,000 public employees of the City of Chicago with over $1.2 billion of retirement

savings under management, appointment of the Chicago Deferred Compensation Plan as Lead

Plaintiff would further the goals of the Reform Act. As a large institutional investor with

significant resources dedicated to overseeing and supervising the prosecution of the litigation,

the Chicago Deferred Compensation Plan will be able to "actively represent the class" and "drive

the litigation" to ensure that the Class obtains the best recovery possible. *See Gluck,* 976 F.

Supp. at 549 (citations omitted). Further, by virtue of its investment in the MFS Funds, which at

-10-

one time reached in excess of $40 million, the Chicago Deferred Compensation Plan believes that it has the highest financial interest in the relief sought by the Class.

> 2.    The Chicago Deferred Compensation
>        Plan Meets The Requirements of Rule 23
>        of The Federal Rules of Civil Procedure

Equally important, the Chicago Deferred Compensation Plan has affirmatively shown that it satisfies the other prong of the Lead Plaintiff provision of the Reform Act – that it meets the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure, which are the provisions of Rule 23 relevant to the determination of Lead Plaintiff under the Reform Act. *See In re Lernout,* 138 F. Supp. 2d at 46; *In re Tyco Int'l Ltd. Sec. Litig.,* 2000 U.S. Dist. LEXIS 13390, at *5 (D. N.H. 2000); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Schulman,* No. 02-CV-1989, 2003 U.S. Dist. LEXIS 10348, at *19 (S.D.N.Y. June 18, 2003). *See also Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (considering only typicality and adequacy on a motion for consolidation and for designation of Lead Plaintiff and lead counsel).

The Committee Chair Tariq G. Malhance's certification affirmatively establishes that the Chicago Deferred Compensation Plan meets the typicality requirement of Rule 23.   The typicality requirement of Rule 23(a) is satisfied when the named plaintiff: (i) suffered the same injuries as the absent class members; (ii) suffered as a result of the same course of conduct by defendants; and (iii) its claims are based on the same legal issues. *See Robidoux v. Celani,* 987 F.2d 931, 936-37 (2d Cir. 1993); *see also In re Bank of Boston Corp. Sec. Litig.,* 762 F. Supp. 1525, 1532 (D. Mass. 1991) ("[t]he plaintiffs' burden in proving typicality requires that the named plaintiffs' claims arise from the 'same events or course of conduct' and involve the same legal theory as do the claims of the rest of the class"); *In re Oxford Health Plans, Inc., Sec.*

*Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which other class members' claims and injuries arise"). Rule 23 does not require that the named plaintiffs be identically situated with all class members. It is enough if their situations share a common issue of law or fact. *See In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 126 (S.D.N.Y. 1997). A finding of commonality frequently supports a finding of typicality. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting how the commonality and typicality requirements "merge"). In this Action, the questions of law and fact common to the members of the Class and which may affect individual Class members include the following:

> (i)    whether the federal securities laws were violated by Defendants' acts;
>
> (ii)   whether statements made by Defendants to the investing public during the Class Period contained material misrepresentations concerning facts about the business, operations and financial statements of the MFS Funds;
>
> (iii)  whether Defendants acted knowingly or with deliberate recklessness in issuing false and misleading statements; and
>
> (iv)   whether the members of the Class sustained damages and, if so, what is the proper measure of damages.

These questions apply equally to the Chicago Deferred Compensation Plan as to all members of the purported Class. Similar to all of the other members of the Class, the Chicago Deferred Compensation Plan purchased and held shares of certain MFS Funds at prices materially distorted as a result of Defendants' misrepresentations. In particular, the Chicago 457 Plan had a financial interest in excess of $40 million invested in the MFS Funds, including an interest in excess of $8 million in the Massachusetts Investors Growth Stock Fund, which, as described more fully above, was one of the MFS Funds where "unrestricted" trading was permitted "even if a pattern of excessive trading has been detected." Moreover, as a result, the

-12-

Chicago Deferred Compensation Plan suffered damages. Because the Chicago Deferred Compensation Plan's claims are based on the same legal theories and "arise from the same course of conduct that gives rise to the claims of other Class members," the typicality requirement is satisfied. *See NASDAQ Market-Makers*, 172 F.R.D. at 126; *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Further, the Chicago Deferred Compensation Plan is uniquely able to carry out the duties and responsibilities required to serve as Lead Plaintiff. Specifically, the Chicago Deferred Compensation Plan will be diligent in leading the litigation, including the supervision of lead counsel and directing litigation strategy and any settlement discussions to obtain the largest recovery for the Class.

      3.     **The Court Should Approve the Chicago Deferred Compensation Plan's Choice of Counsel**

Pursuant to the Reform Act, the proposed Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the Class. *See In re Lernout,* 138 F. Supp. 2d at 46-47. The Court should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(aa), 78u-4(a)(3)(B)(iii)(II)(aa). In that regard, the Chicago Deferred Compensation Plan moves for the appointment of the law firm of Bernstein Litowitz to serve as Lead Counsel in this case. Bernstein Litowitz has extensive experience in successfully prosecuting securities fraud actions and has frequently appeared in major actions before this and other Courts. *See* Bernstein Litowitz's firm resume, attached as Ex. C to the Duff Decl. The Bernstein Litowitz firm has been appointed as lead counsel in numerous securities litigation, including the recent appointments in the *In re WorldCom, Inc. Securities Litigation*, No. 02-CV-3288 (DLC)*, and In*

*re Bristol-Myers Squibb Securities Litigation* No. 02-CV-2251 (LAP). Bernstein Litowitz also has been recognized on numerous occasions as appropriate lead counsel in cases brought since the passage of the Reform Act, including, but not limited to, the *In re Cendant Corp. Litigation*, No. 98-CV-1664 (WHW) (D.N.J.), *Aronson v. McKesson HBOC, Inc.*, No. 99-CV-20743 (RMW), and *In re Lucent Technologies, Inc. Securities Litigation*, No. 00-CV-621 (JAP) (D.N.J.).

## V.    CONCLUSION

For all of the foregoing reasons, the City of Chicago, for the Chicago Deferred Compensation Plan, respectfully requests that the Court: (i) consolidate the above captioned cases; (ii) appoint the Chicago Deferred Compensation Plan to serve as Lead Plaintiff in this consolidated action; and (iii) approve its selection of counsel as Lead Counsel for the Class.

Dated: February 9, 2004

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP


*/s/ Alicia M. Duff*
_____
ALICIA M. DUFF, BBO #637963

ALAN SCHULMAN
ROBERT S. GANS
TIMOTHY A. DeLANGE
ALICIA M. DUFF
12544 High Bluff Drive, Suite 150
San Diego, CA 92130
aliciad@blbglaw.com
Tel:    (858) 793-0070
Fax:    (858) 793-0323
            -and-
DOUGLAS M. McKEIGE
GERALD H. SILK
JOSEPH A. FONTI
EITAN MISULOVIN
1285 Avenue of the Americas
New York, NY 10019
Tel:    (212) 554-1400
Fax:    (212) 554-1444

*Attorneys for the City of Chicago*
*Deferred Compensation Plan and*
*Proposed Lead Counsel for the Class*

::ODMA\PCDOCS\blbgca\13115\1

-15-