UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x
BRUCE RIGGS, Individually and on Behalf of All
Others Similarly Situated,

                 Plaintiff,

- against -

MASSACHUSETTS FINANCIAL SERVICES
COMPANY, et al.,

                 Defendant.
------------------------------------------------------------x
THIS DOCUMENT RELATES TO CASE NOS.:
1:03-CV-12545, 1:03-CV-12514, 1:03-CV-12536,
1:03-CV-12622, and 1:03-CV-12570.
------------------------------------------------------------x

1:03-CV-12500 (William G. Young)


**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
THE DEFERRED COMPENSATION PLAN FOR EMPLOYEES OF NASSAU COUNTY
FOR APPOINTMENT OF LEAD PLAINTIFF AND
FOR APPROVAL OF SELECTION OF CLASS COUNSEL**

Doc# 140118v2

## **PRELIMINARY STATEMENT**

Movant, the Deferred Compensation Plan for Employees of Nassau County ("Movant"), respectfully submits this memorandum of law in support of this motion, pursuant to Fed. R. Civ. P. 42(a), §21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and §27(a)(3) of the Securities Act of 1933 (the "Securities Act"), as amended by the PSLRA, for an order: (a) consolidating the above-referenced securities class actions filed with this Court, along with any subsequently filed related actions, (b) appointing Movant as Lead Plaintiff in the consolidated action, and (c) approving Movant's selection of Wolf Popper LLP as Lead Counsel to the Class.

The Certification of Movant is annexed as Exhibit 1 to the Declaration of Chet B. Waldman in Support of the Motion of the Deferred Compensation Plan for Employees of Nassau County (the "Waldman Decl.").

## **INTRODUCTION**

Since December 11, 2003, numerous class actions have been filed on behalf of all persons, other than defendants and their affiliates, who acquired, redeemed, or owned shares of certain or all of the Massachusetts Financial Services ("MFS") Family of Mutual Funds during the period from approximately December 15, 1998 through approximately December 7, 2003, pursuant to a prospectus therefor, generally for violations of the federal securities laws and the common law.

These class actions concern improper trading practices in the mutual fund industry. In particular, two schemes have been uncovered recently which have incrementally deprived investors of millions and potentially billions of dollars of their hard-earned monies which they invested in mutual

Doc# 140118v2

funds, traditionally viewed as a relatively safe investment whereby risk is diffused across a spectrum of holdings of individual securities, and which have long been the repository of family savings, as well as savings for college and retirement. These schemes – referred to as "late trading" and "market timing" – allowed large institutions to improperly use their size, access to, and influence with mutual fund managers to manipulate market rules and obtain great gains for themselves at the expense of other long-term investors in such funds.

Specifically, on September 3, 2003, the New York State Attorney General announced that one such institution improperly wielding influence, hedge fund Canary Capital Partners, LLC ("Canary"), agreed to pay $40 million to settle charges that it invested in certain mutual funds in exchange for an opportunity to make illegal and improper trades in the funds' shares at the expense of the other mutual fund shareholders, with the active assistance and full complicity of the mutual funds themselves, who are charged with violating their fiduciary duties to other shareholders. However, as indicated by the New York Attorney General, Canary was by no means alone in employing these schemes with mutual funds, as this practice had become rampant in the industry.

The first of the two schemes was the "late trading" of mutual fund shares. The daily price of mutual fund shares is generally calculated as of 4:00 p.m. EST. Orders to buy, sell, or exchange mutual fund shares placed at or before 4:00 p.m. EST on a particular day receive that day's price. Any orders placed *after* 4:00 p.m. EST, however, are priced using the following day's price. Contrary to this rule, Canary and other large investors agreed with certain financial institutions that orders Canary placed after 4:00 p.m. on a given day would illegally receive that day's price (as opposed to the next day's price, which the order would have received had it been processed lawfully). This allowed Canary and

other large investors to capitalize on post-4:00 p.m. information while those who bought their mutual fund shares lawfully could not. It has been observed that "late trading" can be analogized to "betting today on yesterday's horse races." MFS employed this scheme, thus damaging innocent investors such as Movant.

The second scheme involved so-called "timing" of mutual funds. "Timing" is an investment technique involving short-term, "in and out" trading of mutual fund shares, designed to exploit inefficiencies in the way mutual fund companies price their shares. Again, as the Attorney General has underscored, although Canary is the first large investor to pay a substantial fine related to such misconduct, this practice is by no means limited to Canary. Indeed, it is widely acknowledged in the securities industry that timing inures to the detriment of long-term shareholders, and because of this well-known detrimental effect, mutual fund prospectuses typically state that timing is monitored and that the funds work to prevent it. In fact, many mutual fund companies have employees (known as "timing police") charged with identifying "timers" and stopping their short-term trading activity. Nonetheless, in return for investments that will increase fund managers' fees, fund managers entered into undisclosed agreements to allow timing, making arrangements for Canary and other market timers to be exempt from the "timing police."

The registration statements and prospectuses issued by certain mutual fund companies, including MFS, created the misleading impression that they were vigilantly protecting investors against the negative effects of timing. In fact, the opposite was true: Managers sold the right to time their funds to certain preferred institutional investors. The prospectuses were silent about these arrangements. And as a result of "market timing," these preferred institutional investors, as well as the mutual fund

companies and their intermediaries, profited handsomely. The losers were unsuspecting long-term mutual fund investors. Movant was one of these investors.

In class actions filed under the Securities Act and/or the Exchange Act, the PSLRA requires that courts appoint as Lead Plaintiff the member of the class that has satisfied certain procedural prerequisites and also constitutes the "most adequate representative" of the prospective class. As set forth below, Movant amply satisfies all of the criteria for selection as Lead Plaintiff. Furthermore, Movant satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. Accordingly, Movant should be appointed Lead Plaintiff.

Movant also respectfully requests that the Court approve its selection of Lead Counsel, in accordance with the PSLRA. The law firm selected by Movant, Wolf Popper LLP, has extensive experience in securities class action litigation and is well-qualified to represent the interests of all Class members.

## PROCEDURAL BACKGROUND

Since December 11, 2003, at least eight lawsuits have been filed against MFS (along with other related defendants), with at least six in this Court. The actions allege federal securities law violations, including Securities Act and Exchange Act violations, on behalf of all persons and entities, other than defendants and their affiliates, who acquired, redeemed, or owned shares of certain or all of the MFS Family of Mutual Funds during similar time periods. The above-referenced actions are clearly appropriate for consolidation under Fed. R. Civ. P. 42(a) because they are based on substantially similar factual allegations and make the same legal claims.

## ARGUMENT

I. **THE ACTIONS PENDING IN THIS COURT SHOULD BE CONSOLIDATED PURSUANT TO FED. R. CIV. P. 42(a)**

Consolidation of actions in federal courts is governed by Fed. R. Civ. P. 42(a), which states:

> When actions involving a common question of law of fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Consolidation pursuant to Rule 42(a) is proper when actions involve common questions of law and fact. See Moore, Manual for Complex Litigation (3d), §20.123, 13-14 (1995). Similarly, Section 21D(a)(3)(B) of the PSLRA contemplates the consolidation of multiple actions "asserting substantially the same claim or claims."

Consolidation is particularly appropriate here. All of the above-referenced actions are based on substantially similar factual allegations and make substantially similar legal claims. These actions also seek to represent virtually identical classes. As a result, consolidation will serve to avoid duplicative discovery, motion practice, and other proceedings that will result if the actions are not consolidated. The interests of economy and justice therefore militate strongly in favor of consolidation of the actions. See PSLRA §27(a)(3)(B), 15 U.S.C. §77z-7(a)(3)(B).

II. **MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF**

   A. **Movant Has Satisfied The Procedural Requirements Of The PSLRA**

Under the provisions of the PSLRA, a person or group of persons seeking to serve as Lead Plaintiff must fulfill certain procedural prerequisites prior to being appointed to serve in such a capacity. Plaintiffs who commence securities class actions must publish a notice to the class within twenty days of

filing the action, informing class members of the pendency of the action and their right to file a motion for appointment as Lead Plaintiff. See PSLRA §27(a)(3)(A)(i), 15 U.S.C. §77z-1-4(a)(3)(A)(i). Within sixty days after that publication of notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as Lead Plaintiff. Id.

On December 11, 2003, a notice of the pendency of this action was published through *PRNewswire*, informing investors of a securities class action filed on behalf of certain investors in The MFS Family of Mutual Funds. A copy of this notice is attached as Exhibit 2 to the Waldman Decl. Further, Movant's motion is timely because it is being made within sixty days after publication of the initial notice. Thus, Movant has satisfied the procedural prerequisites set forth in the PSLRA.

### B. Movant Is The "Most Adequate Plaintiff"

The PSLRA mandates that, not more than ninety days after publication of the initial notice of pendency, a court shall consider any motion made by any class member and appoint as Lead Plaintiff the member of the class that the court determines to be most capable of adequately representing the interests of class members. See PSLRA §27(a)(3)(B), 15 U.S.C. §77z-1(a)(3)(B). Under the PSLRA, such persons are referred to as the "most adequate plaintiff." Id.

The statute dictates that courts must presume that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of

the Federal Rules of Civil Procedure.

PSLRA §27(a)(3)(B)(iii)(I), 15 U.S.C. §77z-1(a)(3)(B)(iii)(I). Movant is entitled to this presumption and is demonstrably the most adequate plaintiff.

### 1. Movant Has Made A Motion For Appointment As Lead Plaintiff

Movant has fulfilled the first prong of the foregoing statutory test for determining the most adequate plaintiff. Movant has demonstrated a willingness to serve as a representative on behalf of the Class, and has made this motion. Therefore, this element is satisfied.

### 2. Movant Has A Substantial Financial Interest

The second prong of the test for the "most adequate plaintiff" requires the proposed Lead Plaintiff to demonstrate that he, she, or it has the largest financial interest in the relief sought by the Class. Section 27(a)(3)(B)(i) of the PSLRA provides that "the court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."

Pursuant to the foregoing criteria, Movant believes that, of the qualified applicants, it has the largest financial interest in the relief sought by the Class. Among other things, as of June 30, 2003, Movant had more than $3 million invested in various funds in the MFS Family of Mutual Funds, including $1,309,321 invested in the MFS Massachusetts Inv. Fund, which has been expressly implicated in the publicized governmental investigations of MFS and its related entities. Shares of MFS Funds were purchased during the Class Period through contributions to Movant. Indeed, more than $300,000 in contributions were used to purchase MFS Funds in the first half of 2003 alone.

### 3. Movant Satisfies Rule 23

In addition to the aforementioned requirements, PSLRA §27(a)(3)(B)(iii)(I)(cc) dictates that the proposed Lead Plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." To satisfy Rule 23, plaintiffs seeking class certification must demonstrate that: the number of class members is so large that joinder of all class members is impracticable; common issues of law and fact exist and predominate over individual questions; the class representatives are typical of class members; the class representatives will fairly and adequately protect the interests of the class; and a class action is superior to individual actions. See Fed. R. Civ. P. 23(a) and (b)(3). For purposes of a motion for appointment of Lead Plaintiff, a movant needs only make a preliminary showing that he, she, or it satisfies Rule 23. See Yousefi v. Lockheed Martin Corp., 70 F. Supp. 2d 1061, 1071 (C.D. Cal. 1999) ("At this stage of the proceeding, proposed lead plaintiffs need only make a preliminary showing that they satisfy the requirements of Rule 23."); see also Greebel v. FTP Software, Inc., 939 F. Supp. 57, 64 (D. Mass. 1996) (requiring only a prima facie showing of the satisfaction of Rule 23).

Of the prerequisites to class certification set forth in Rule 23, only the typicality and adequacy prongs are implicated in any consideration of the "most adequate plaintiff." This is clear from Section 27(a)(3)(B)(iii)(II), which provides that the presumption in favor of the most adequate plaintiff may be rebutted only upon proof that this individual or group:

> (aa)  will not fairly and adequately protect the interest of the class; or
>
> (bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

Id. Consequently, in deciding a motion for appointment of Lead Plaintiff, inquiry should be limited to

the typicality and adequacy prongs of Rule 23(a). See In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) (noting that the preliminary showing at this stage of the litigation need only be made as to the typicality and adequacy requirements of Rule 23); Gluck v. CellStar Corp., 976 F. Supp. 542, 546 (N.D. Tex. 1997).

### a.   Movant Fulfills The Typicality Requirement

The typicality requirement of Rule 23(a)(3) is satisfied when each class member's claims arises from the same course of events and each class member makes similar arguments to prove the defendants' liability. See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992), cert. dismissed, 506 U.S. 1088 (1993); see also In re Oxford Health Plans, Inc., Sec. Litig., 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (Typicality is satisfied where the claims "arise from the same conduct from which the other class members' claims and injuries arise.") (citations omitted).

Movant seeks to represent a Class of persons who purchased shares of MFS mutual funds, which were subjected to the improper trading practice described above during the Class Period and were damaged thereby. Movant satisfies the typicality requirement because it has: (i) purchased shares of MFS mutual funds during the Class Period and (ii) suffered damages thereby. Thus, typicality is satisfied since the claims asserted by Movant arise "from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." See Walsh v. Northrup-Grumman Corp., 162 F.R.D. 440, 445 (E.D.N.Y. 1995) (citations omitted).

### b.   Movant Fulfills The Adequacy Requirement

Section 27 of the PSLRA directs the Court to limit its inquiry under the adequacy prong to the existence of any conflicts between the interests of the proposed representative and the members of the

Class, and then allow the Lead Plaintiff to retain Lead Counsel to represent the Class, "subject to the approval of the court." See §27(a)(3)(B)(v) of the Securities Act.

Here, the interests of Movant are clearly aligned with the members of the Class, and there is no evidence of any antagonism between Movant's interests and the interests of the Class. As detailed above, Movant shares virtually identical questions of law and fact with the members of the Class, and the claims are typical of the claims of other Class members. Further, Movant has already demonstrated an interest in pursuing this action on behalf of the Class by signing a Certification.

Movant is a victim of the same unlawful conduct as all other Class members, and those claims raise similar questions of law and fact as those of all Class members. Movant will necessarily have to advance the interests of all Class members. Movant has already demonstrated a commitment to vigorously prosecute claims on behalf of the Class by retaining counsel experienced in complex class litigation and by executing the Certification. These facts amply demonstrate that Movant will adequately represent the interests of Class members.

### III.    THE COURT SHOULD APPROVE MOVANT'S CHOICE OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel, subject to court approval. See PSLRA § 27(a)(3)(B)(v), 15 U.S.C. §77z-1(a)(3)(B)(v). Consistent with congressional intent, a court should not disturb the Lead Plaintiff's choice of counsel unless "necessary to protect the interest of the plaintiff class." See Statement of Managers – The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H13691-08, at H13700, H. R. Conf. Rpt. No. 104-369, at 62, 104th Cong. 1st Sess. (Nov. 28, 1995). Movant has selected Wolf Popper LLP as Lead Counsel to prosecute this class action. Wolf Popper LLP has been highly successful in prosecuting

securities fraud and other class action litigation, as outlined in the resume annexed as Exhibit 3 to the Waldman Decl. Thus, the Court may be assured that by granting this motion, the members of the Class will receive the highest caliber legal representation available.

## CONCLUSION

For all of the foregoing reasons, Movant respectfully requests that this motion seeking consolidation of the actions filed with this Court and the appointment of Movant as Lead Plaintiff be granted and that the counsel Movant has selected and retained be approved as Lead Counsel for all plaintiffs and Class members in connection with these proceedings.

Dated: February 9, 2004
      New York, New York

                        Respectfully submitted,

                        **WOLF POPPER LLP**

                        By: *Chet B. Waldman*
                        Marian P. Rosner
                        Chet B. Waldman
                        Andrew E. Lencyk
                        Wolf Popper LLP
                        845 Third Avenue
                        New York, NY 10022
                        (212) 759-4600

                        *Attorneys for Movant and*
                        *Proposed Lead Counsel for the Class*